ATKESON, *Appellant*, v. LAY.

Division One, May 8, 1893.

1. **Australian Election Law:** ELECTOR'S CERTIFICATE: GROUPING NAMES OF CANDIDATES. Under the Australian ballot law (Revised Statutes, 1889, secs. 4757-59 as amended by act of 1891, Laws, sec. 4, p. 134), where a political party fails to nominate a candidate by convention or primary election and a candidate is nominated by electors who, in the certificate, state he was nominated as the candidate of such party, he does not thereby become its candidate so as to entitle him to have his name placed in the same group with the other candidates of such party.

2. ————: CANDIDATE: CONSTITUTIONAL AMENDMENT. The fact that a constitutional amendment submitted at an election was not printed in proper form on the ballot, does not give a defeated candidate ground for complaint, as it does not affect his rights.

3. ———: BALLOT, CLERK'S FAILURE TO PUBLISH. The fact that the ballot was not published by the county clerk in two newspapers, or in any newspaper of the county in which the election was held, as required by law, will not of itself vitiate the election.

4. ———: NEWSPAPERS: JUDICIAL NOTICE. Courts will not take judicial notice of the number of newspapers printed in a county, or that any newspaper is published therein.

*Appeal from Cass Circuit Court.*—HON. C. W. SLOAN, Judge.

AFFIRMED.

*E. J. Smith* for appellant.

(1) A political party may nominate candidates in either of the three ways, viz.: by convention, by primary election or by electors. Revised Statutes, 1889, sec. 4757; acts 1891, p. 134; acts 1892, sec. 27, p. 10. (2) The only official knowledge the county clerk has of the nominee is by the certificate of the secretary of state, and he can do no more than print the tickets as certified to him. Revised Statutes, sec. 4767–8; *State ex rel. v. Lesueur*, 103 Mo. 253; *Bowers v. Smith*, 111 Mo. 45; *People v. District Court*, Sup. Ct. Col., Oct. 8, 1892. (3) The specifications in the demurrer do not raise any question as to whether any votes cast for contestee in Henry county should be counted. They go on the theory that no votes in Henry county should be counted for either of these parties, and that contestee was elected because of the invalidity of the votes cast for contestant in the other counties. However, as we claim the tickets in the other counties were valid, and that no votes in Henry county should be counted for this office, because that ticket was invalid, and perhaps that question is raised by the part of the demurrer that is general, before the specifications, and this question must finally be passed on in this case,

we submit the authorities on it and ask the opinion of the court. Revised Statutes, sec. 4671, 4772–3; also sec. 4753; *Bowers v. Smith*, 111 Mo. 45; *Breckenridge v. Cook*, 41 Mo. 593; *West v. Ross*, 53 Mo. 350; *Ledbetter v. Hall*, 62 Mo. 422; *Gumm v. Hubbard*, 97 Mo. 311; *Harrison v. Frazier*, 98 Mo. 426; *Price v. Lush*, 10 Mon. 61; 24 Pac. Rep. 749; *People v. Board*, 29 N. E. Rep. 327; *Talcott v. Philbrick*, 59 Conn. 472; 20 Atl. Rep. 436; *Field v. Osborn*, 21 Atl. Rep. (Conn.) 1070; *In re Water Works*, 21 Atl. Rep. (S. C. R. I.) 962; *People v. District Court, supra*.

*De Armond & Smith*, with whom are *C. C. Dickinson, J. D. Lindsay, T. W. Silvers* and *R. E. Lewis*, for respondent.

(1) A political party having the legal capacity to nominate in the usual way by primary election or convention, does not have the right under the election laws of 1889 and 1891, to nominate a candidate by petition or certificate of voters. (2) That no set of persons confessedly and avowedly not belonging to nor affiliating with a given political party can have the right to nominate candidates for such party, is clear to everyone familiar with the law of agency. Can a Democratic convention, organized and acting as such, make a legal nomination under our reform election laws for the Republican party? If the political party as a whole cannot so act for another, a small fraction of it cannot do so. (3) Appellant's position is that a number of voters equal to one per cent. of those voting at the election last prior to that of November 2, 1892, in the counties composing the twenty-ninth judicial circuit, and belonging to the People's party, can by their petition or certificate after nominating appellant as the candidate of that party in the same manner and

by the same means, that is by the same certificate, nominate him as the candidate of the Republican party. The position is untenable and finds no countenance in the statute. Revised Statutes, 1889, sec. 4773; Acts, 1891, p. 134. (4) The failure of appellant to pursue the statutory remedy for correcting the supposed error of the clerk of the Henry County Court in printing the ballot, operated as a waiver of any alleged error on that account. *Bowers v. Smith*, 111 Mo. 45; *Allen v. Glynn*, 29 Pac. Rep. 670; *State, etc., v. Lesueur*, 103 Mo. 265; *State, etc., v. Russell*, 51 N. W. Rep. (Neb.) 465.

BRACE, J.—This is a proceeding under the statute, commenced by the appellant before Hon. C. W. Sloan, Judge of the seventeenth judicial circuit, contesting the election of respondent to the office of judge of the twenty-ninth (an adjoining) judicial circuit, at the November election, 1892.

The following are the material allegations of the petition: "That at said election this contestant was a candidate and to be voted for said office of judge of the circuit court of the twenty-ninth judicial circuit, and the said James H. Lay, contestee herein, was also at said election a candidate for said same office. That said twenty-ninth judicial circuit consisted and consists of the counties of Bates, St. Clair, Benton and Henry; that as shown by the returns sent by the several county court clerks to the secretary of state, the said contestant and contestee received and had so certified the following vote, to-wit: In the county of Bates this contestant received and had so counted and certified in his behalf, three thousand five hundred and eighty-one votes, and contestee received and had so counted and certified in his behalf, three thousand one hundred and seventy-five votes, showing a majority in favor

of the contestant in said county of four hundred and six votes; in the county of St. Clair, contestant received and had counted and so certified and returned in his behalf, two thousand and forty-six votes and contestee received and had counted and so certified and returned in his behalf, one thousand six hundred and twenty-nine votes, showing a majority in said county of four hundred and seventeen votes for contestant; that in said Benton county, said contestant received and had so counted and returned in his behalf, one thousand eight hundred and eight votes, and contestee received therein and had so certified and returned for him, one thousand two hundred and thirty-four votes, showing a majority in said Benton county for contestant of five hundred and seventy-four votes; that by the returns certified from and by the clerk of the county court of said Henry county, this contestant is shown to have received and had certified and returned in his behalf in said Henry county, one thousand and ninety-two votes; while by the same, contestee is shown to have received in said Henry county, three thousand three hundred and ninety-four votes, showing a majority in said Henry county in favor of contestee of two thousand three hundred and two votes, which shows on the face of said returns a majority of nine hundred and five votes for contestee in said twenty-ninth judicial circuit. But this contestant and petitioner now says that in law and truth and fact there were no legal votes or ballots cast for contestee in said Henry county at said election, and none of the votes for contestee so counted and returned for him in said Henry county should have been so counted and so returned for him for the following reasons, to-wit: The Republican party of said twenty-ninth judicial circuit did not hold any delegate convention or any primary election to nominate a candidate for said office of judge of said court, to be voted for at

said election, yet this contestant was duly nominated as the candidate of said Republican party by petition or certificate of and by electors resident within said twenty-ninth judicial circuit, duly qualified thereto as required and provided by section 4763, Revised Statutes of Missouri of 1889, and the petition or certificate thereof and thereto duly and properly filed in the office of the secretary of state of said state of Missouri, in due time as required by law, to-wit: not more than sixty days and not less than twenty days before the day of said election, and the said secretary of state in due time, to-wit: not less than eighteen days before the day of said election, did certify to the clerk of said county court of Henry county the names and descriptions of the several persons nominated and to be voted for by voters of said Henry county, with the voters of other counties for the several offices so to be voted for by said voters of said Henry county, as specified in the certificate of nomination filed with said secretary of state, and so said secretary of state duly certified to said county court clerk of Henry county, the name of this contestant as a candidate of the said Republican party for said office of judge of the circuit court of said circuit, notwithstanding all of which the said clerk of said Henry county court, in printing and causing to be printed, the tickets on the ballots for use, and which were used at said election in said Henry county, did not group all the candidates of the said Republican party in one group or ticket, under one head, giving the same the the name of the 'Republican ticket,' as was his duty under the law; but on the contrary, said clerk, in printing and causing to be printed said tickets or ballots, headed one group 'Democratic ticket,' and in the same he grouped and caused to be printed the names of all the candidates of said Democratic party, and at the regular and proper place, the name of contestee, James

H. Lay, was properly printed. He headed one group or ticket 'Republican ticket,' but in the same, at the proper place for said office and candidate, he did not print or cause to be printed the name of this contestant as candidate for said office of judge of said circuit court of said twenty-ninth judicial circuit, but left the same blank so far as such candidate was and is concerned, giving same the name or style of the office to be filled, but no name or any candidate therefor, thus: 'For judge of the circuit court twenty-ninth judicial circuit, —— ——.'

"On said ballot said clerk headed one group 'Prohibition Ticket,' and under which was grouped the names of the candidates of the Prohibition party nominated for the several offices to be filled at said election and voted for by the voters of said Henry county.

"One other group he headed 'People's ticket,' and on and under which he grouped and caused to be printed the names of those nominated by said People's party for the various offices to be voted for by said voters of said Henry county at said election; that in another place on said ballot, all by itself and without being grouped with any other, said clerk printed and caused to be printed the name of this contestant as a candidate for said office of judge of said circuit court of said twenty-ninth judicial circuit without giving or printing anything to indicate what party he was nominated by or whose candidate he was, or what political principles he represented, but simply headed the same 'Nominated by electors,' so that that part of said printed ballot read and reads simply thus: 'Nominated by electors for judge of the circuit court twenty-ninth judicial circuit, William C. Atkeson.'

"That said county court clerk caused said tickets to be so printed and distributed, and none other, to the different polls and voting places in said Henry

county, and the same, and none other, were used by
the voters in said election in said Henry county, Mis-
souri. And contestant further says, that at said
election he said contestant was the duly nominated can-
didate of said 'People's party' for said office of judge
of the circuit court of said twenty-ninth judicial circuit,
being nominated thereto in the same manner and by
the same means as he thus was so nominated as the
candidate of said Republican party for said office, and
the fact was in like manner in all things certified to
said Henry county court clerk, and said clerk caused
the name of contestant to be duly printed in the
proper place in the group of names of candidates of
said People's party as a candidate for said office of
judge of said circuit court; that the result of the fore-
going was that at said election in said Henry county,
while the candidates of the said Republican party for
Presidential electors received two thousand five hun-
dred and sixty-three votes, and while the candidates
of said People's party for said offices of electors
received three hundred and ninety-nine votes, making
a total of votes received for said electors by the candi-
dates of the said two parties two thousand nine hun-
dred and sixty-two votes. In like manner when Hon.
Wm. Warner, the candidate of said Republican party
for governor, which office was voted for at said elec-
tion, received two thousand six hundred and sixty-four
votes, and Hon. Leverett Leonard, the candidate of the
People's party at said election for governor, received
three hundred and forty-nine votes, making in the
aggregate of votes so received and cast in said Henry
county for said two candidates for governor three
thousand and thirteen votes, notwithstanding all of
which this contestant only received and had counted
and so returned for him at said election one thousand

and ninety-two votes, showing, as was the fact, that over two thousand voters who voted at said election did not vote for anyone for said office of judge of the circuit court of said twenty-ninth judicial circuit, for in truth and in fact there were not at said election any other candidates for said office of judge of said court of said circuit, but and except this contestant and this contestee, nor was any other voted for for said office by the voters of said Henry county at said election. Contestant further says that in each of the other counties in said twenty-ninth judicial circuit his name was properly printed on the ballots and grouped among the candidates of both the Republican party and people's party, and as a result thereof contestant received in said other counties the following vote: While in said Bates county the combined vote of the Republican and People's parties for Presidential electors was three thousand seven hundred and ninety-six votes, and the combined votes of said parties for governor was three thousand seven hundred and thirty, contestant received and there were so cast, counted and returned for him in said county three thousand five hundred and eighty-one votes; and in the county of St. Clair, when the said combined vote on Presidential electors was two thousand one hundred and eight votes, and the combined votes therein of said two parties for governor was two thousand one hundred and sixteen votes, contestant received and had so counted and returned therein for him two thousand and forty-six votes; and in Benton county, where the combined vote of said two parties for Presidential electors was two thousand and three votes, and the said combined vote for governor was two thousand and twenty-three votes, contestant received and had so counted and returned for him one thousand eight hundred and eight votes; and contestant herein, if his

name had been printed on said ticket or ballot in said Henry county in the group and ticket of the Republican party and its candidates, he would have received the votes of substantially all the voters in said Henry county of both said Republican party and People's party, and would have been elected to said office.

"By means and by reason of the fact aforesaid, contestant says said ballot so printed, distributed and used in said Henry county at said election was and is misleading, unlawful and fraudulent and should not have been used in and at said election, and no votes so counted and returned for contestee in and from said Henry county should have been or could properly and legally be counted for contestee."

To this petition the respondent filed a demurrer, which was sustained by the judge, and from his judgment thereon the contestant appeals to this court.

I. The law provides that all ballots cast at elections for public officers within this state shall be printed and distributed at public expense (Revised Statutes, 1889, ch. 60, art. 3), and it is made the duty of the clerk of the county court to provide printed ballots for every election for public officers and cause to be printed thereon "the name of every candidate whose name has been certified to or filed with him in the manner provided for in this article. Ballots other than those printed by the respective clerks of the county courts according to the provisions of this article shall not be cast or counted in any election." Sec. 4772. And every ballot thus printed "shall contain the name of every candidate whose nomination for any office specified in the ballot has been certified or filed according to the provisions of this article and no other names. The names of candidates nominated by each party shall be grouped together upon the proper ballot, and

each group be headed by the name of the political party by which the candidates composing said groups are placed in nomination. Every ballot shall also contain the name of the party or principle which the candidates represent as contained in the certficates of nominations. Underneath the name of each candidate shall be left a blank space large enough to contain a written name." Sec. 4773; Act 1891, sec. 4, p. 134.

On the ballots prepared, printed, distributed and voted at the election in question in Henry county, the names of the candidates nominated by each party were grouped under the following headings: *"Democratic Ticket," "Republican Ticket," "Prohibition Ticket," "People's Ticket,"* and the name of the contestant was printed on said ballots in the group headed *"People's Ticket"* and also separately under the heading "Nominated by Electors" as a candidate for "Judge of the circuit court twenty-ninth judicial circuit." His main contention now is that his name should also have been printed on said ballots in its proper place in the group headed "Republican Ticket," as a candidate for said office. The merits of this controversy will be better understood by setting out the additional sections of the statute bearing directly upon it, as amended by the act of 1891. They are as follows:

"Sec. 4757.—Any convention of delegates or primary election as hereinafter defined, held for the purpose of making nominations to public office, and also electors to the number hereinafter specified, may nominate candidates for public offices to be filled by election within the state. Such nomination shall be made by filing a certificate of nomination, executed with the formalities prescribed for the execution of an instrument affecting real estate.

"Sec. 4758.—The certificate of nomination, which may consist of one or more writings, shall contain the

name of the person nominated, his residence, occupation, and the office for which he is nominated, and also the name and residence of each signer. The certificate may also designate by name the party or principle which such nominee shall represent.

"Sec. 4759.—Certificates of nomination shall be filed with the secretary of state for the nomination of candidates for offices to be filled by the electors of the entire state, or any district or division of a greater extent than one county. For all other nominations to public offices, certificates of nomination shall be filed with the clerks of the county courts of the respective counties wherein the offices are to be filled by the electors.

"Sec. 4760.—A convention of delegates within the meaning of this article, is a convention of delegates of any political party which at the last general election before such convention polled as a party at least three per cent. of the entire vote cast in the state, the county, or other division or district for which the nomination is made.

"Sec. 4761.—A primary election within the meaning of this article is an election held within this state, county, district or subdivision thereof, as the case may be, by the members of any political party, or by the voters of some political faith, for the purpose of nominating candidates for office: Provided, that the said party shall have cast at least three per cent. of the entire vote cast within the state, county, district or subdivision thereof.

"Sec. 4762.—The certificate of nomination of a candidate for office, selected by any convention of delegates as herein defined, shall be signed and executed by the presiding officer and secretary of such convention. The certificate of nomination of a candidate for office, selected by any primary election, as

herein defined, shall be signed and executed by the presiding officer and secretary of the political committee under whose direction it is held. (Laws, 1891, p. 134).

"Sec. 4763.—The certificate of nomination of a candidate selected otherwise than by a convention of delegates shall be signed by electors resident within the district or political division for which the candidate is presented to a number equal to one per cent. of the entire vote cast at the last preceding general election in the state, the county or other division or district for which the nomination is made: Provided, that the number of signatures so required shall not exceed one thousand nor be less than fifty."

"Sec. 4767.—Not less than eighteen days before an election to fill any public office, the secretary of state shall certify to the clerk of the county court of each county within which any of the electors may by law vote for candidates for such office, the names and the description of each person nominated for such office, as specified in the certificates of nomination filed with the secretary of state."

In considering the law in question the significant feature that first arrests the attention, is that the name of no citizen is authorized to be printed on the ballot to be voted for as a candidate for any public office, unless he has theretofore been duly nominated for such office. That such nomination can only be made in one of three ways; by a convention of the delegates of some political party which at the last general election before such convention polled, as a party at least three per cent. of the entire vote cast in the state, county or other division or district for which the nomination is made; by a primary election held by the members of some political party, or the voters of some political faith, having at least three per cent. of the entire vote

cast within the state, county, district or subdivision thereof, for which the nomination is made; or by a certain number of electors resident within the district or political division for which the candidate is presented.

The law makes no provision for the nomination of candidates by a political party of less strength than the required three per cent., or in any other manner than by a convention of delegates or a primary election and only candidates so nominated become the nominees of a political party and as such entitled to go upon the ballot to be so voted for.   Candidates nominated by electors, are not the nominees of a political party, but of the individual electors nominating them, and only as such are entitled to go upon the ballot.

All nominations, however made, are to be authenticated by a certificate, which for such an office as the one in question must be filed with the secretary of state. This certificate *must* contain "the name of the person nominated, his residence, occupation and the office for which he is nominated and also the name and residence of each signer."   If by a convention of delegates, it must be signed by the presiding officer and secretary of the convention; if by a primary election, by the presiding officer and secretary of the political committee under whose direction it is held; if by electors, it must be signed by them, and such certificate "*may* also designate by a name the party or principle which such nominee shall represent."

This last clause of section 4758 was evidently inserted for special application to nominations by electors, since the name of the party or principles which a nominee by convention or primary election is intended to represent, is sufficiently indicated by the name of the party making the nomination.   It can give no countenance to the idea that electors by select-

ing *the name* of a political party authorized to make nominations by convention or primary election (to indicate the principles of their nominee), can make *such nominee* the *nominee* of the *political party* whose name they may select.

The duty of the secretary of state, after such certificates have been duly filed in his office is to certify "to the clerk of the county court of each county within which any of the electors may by law vote for candidates for such office *the names and description of each person* nominated for such office, as specified in the certificates of nomination filed with the secretary of state." Section 4767.

In the exercise of this duty the secretary acts purely as a ministerial officer, the law invests him with no power to fix the political *status* of any candidate or to assign him to any position on the ballot to be voted. All that he is authorized to do in regard to any nominee is to certify to the county clerk the substance of what has been certified to him in regard to such candidate by those who nominated him. If he has been nominated by a political party, authorized to make nominations by convention or primary election, he should certify to the county clerk that he was so nominated by such party, naming it, and stating the office for which he was nominated, his residence and occupation. When a candidate has been so nominated and his nomination so certified, he becomes the candidate of the political party nominating him and has the right to go upon the ballot in that character.

If he is nominated by individual electors, the secretary *inter alios* should so certify, and if in their certificate of nomination to him they have designated by name a political principle which their candidate is to represent, that fact and name should also be certified to the county clerk. A candidate so nominated,

and his nomination so certified becomes the candidate of the electors nominating him, representing for them the political principle named, and in that character has a right to go upon the ballot.

As we have seen, the law makes it the duty of the county clerk to have printed upon the ballot the name of every candidate whose nomination for any office has been thus duly certified to him, and he alone is charged with the duty, and invested with the power of arranging the names of the candidates on the ballot. The manner in which they shall be arranged is not left to his discretion, however, but is plainly and specifically set out in the statute, from which he has no power to depart. The mandate of the law is that "the names of candidates *nominated by each party* shall be grouped together upon the ballot, and each group be headed by the name of the political party by which the candidates composing said groups are placed in nomination." The names of candidates nominated for office, other than county offices, he obtains from the certificates of the secretary of state, hence the necessity of the certificate of that officer showing the manner in which nominations certified by him have been made, in order that the county clerk may group together the names of the several candidates for the several offices for which nominations have been certified to him as having been made by the several political parties under the names of the parties respectively making them as is his duty under the law. In no one of such groups is the clerk authorized to place the name of a candidate who has not been nominated by a political party and so certified to him, and he must place the name of every candidate so nominated and certified under the name of the political party by which he was nominated as certified to him.

When the candidates of the several political parties are thus arranged on the ballot, the voters are advised in regard to each, that he is the regular nominee of the party under whose name he appears, which name designates the principle of the party nominating him. While a candidate nominated by electors can and ought to have no place in such groups, he is entitled to have his name go upon the ballot as prominently as those of party nominees, and in such manner that the true character of his candidacy may be as palpable to the voter as in the case of candidates nominated by a political party. In order to do this it is necessary that it should appear upon the ballot that he is an electors' candidate, and that for such electors he represents the principle designated in their certificate of his nomination. The law does not provide specifically how this shall be made to appear on the ballot, as in case of party candidates; but to place the former on a parity with the latter, it should be by a heading as bold and significant in the one case as in the other, and representing to the mind of the voter the same kind and quantity of information in regard to the candidacy of the one as the other. For instance, in the present case all the candidates nominated by the democratic party were grouped under the heading democratic ticket. Those nominated by the republican party under the heading republican ticket, and so on; the word *ticket* instead of *group* being used in conformity to the system that formerly prevailed, and to which the people had become accustomed, and in the use of which no impropriety can be seen.

As the contestant was not nominated by any of these political parties, there was no place for him under either of these headings; consequently, a heading appropriate to his candidacy had to be formulated as brief as the nature of the case would permit. In his case the requirements of the situation would have been

fairly met by the heading "Electors' (Republican) ticket," which would have indicated as plainly to the voter the nature and character of his candidacy under one of his certificates, as did the other headings indicate the character of the candidacy of those whose names appeared under those headings. And when placed at the top of the ballot in like type, and on a line with the other headings with his name underneath for the office for which he was nominated, his name and claim for the suffrages of the voters would have been as truly, prominently and distinctly placed before them as those of the candidates under the other headings; and as according to the allegations of the petition, he was in like manner nominated by other electors who designated the party or principle by which *they* desired his candidacy to be characterized as that of "The People's party," so also he had the right to have his name placed under another heading, at the top of the ticket on a line with the other headings in like type, which heading might well have been "Electors' (People's) ticket" or "Electors' (People's Party) ticket."

The specific ground of contestant's complaint is, however, that his name was not placed in an appropriate place on the ballot in the group of candidates of *the Republican party* as the candidate of that party for the office of judge of the circuit court for the twenty-ninth judicial circuit. While the petition alleges that the contestant was duly nominated as the candidate of the republican party, and that his nomination was so certified to the county clerk by the secretary of state, this is simply the averment of an erroneous conclusion of law from the facts set out in the petition, which show how he was nominated, from which it appears that *he was not* nominated by the republican party; that that party made no nomination for the office in question, but that he *was* nominated by electors, acting in

their individual capacity, for that office as a Republican, and that his nomination could only have been so certified to the secretary of state. Upon such a basis the secretary, who must be presumed to have done his duty, could not have certified that the contestant was the nominee of *the Republican party*. All he could do was to certify that the contestant had been duly nominated by electors as a Republican candidate for the office in question; and this is the substance of the allegations of fact in the petition in this regard. Upon such certificate the county clerk was not authorized to print the name of the contestant in an appropriate place as a candidate for the office in question *with* the candidates nominated *by* the Republican party grouped under the heading "Republican ticket;" but should have caused his name to be printed on the ballot as hereinbefore indicated.

The contestant's name was put upon the ballot in two places under two headings, but not in the manner required, but of any error in this respect he does not complain for the obvious reason that he would have more to lose than to gain by a correction. For, while the contestant has no right to complain that his name was not put upon the ballot as the nominee of the Republican party in Henry county, his competitor has the valid and substantial ground of complaint, that in the other counties of the circuit in which the contestant obtained majorities, his name was printed on the ballot in the group of candidates nominated by the "People's Party," when in fact he was not nominated by that or any other political party. This disposes of the only serious question in this controversy.

In addition, it is alleged in the petition that a constitutional amendment submitted at said election was not printed in proper form on the ballot. Of this,

however, the contestant has no right to complain, as that question could have no bearing upon the merits of his contention.

Also that the ballot was not published by the county clerk in two newspapers or in any newspaper published in said county. It cannot be seriously contended that the failure of the county clerk to publish the tickets as required, *per se*, absolutely vitiates the election. Besides, the courts cannot take judicial notice of the number of newspapers, or of the fact that a newspaper is published in a given county, in the absence of which the ballot may be published by printed notices posted in the office of the county clerk and in other public places. Sec. 4768.

The judgment of the circuit court on the demurrer was correct and is affirmed. All concur, except BARCLAY, J., absent.