*494
 
 Matthias and Taft, JJ.,
 

 dissenting. Prior to January 2, 1948, Section 4785-131, General Code, contained specific provisions as to fiow a ballot should be marked. One of the provisions (subdivision 6) related to writing in the name of a candidate. The statute did not provide separate rules for marking of the party column ballot and for marking of the nonpartisan or primary election ballot.
 

 The statute, as amended effective January 2, 1948, contains the provision, “In marking a party column ballot the voter shall observe the following rules * * Then follow certain specific rules for marking such ballot, but no provision for a write-in of any name. The statute then provides:
 

 “In marking a nonpartisan or primary election ballot the voter shall observe the following rules:
 

 i i
 
 * * ft « =X-
 

 “2b. If the voter desires to vote for the nomination of a' person whose name is not printed on the ballot he may do so by writing such person’s name on the ballot in the proper place provided for such purpose and placing ‘X’ in the rectangular space on the ballot at the left of the name so written.”
 

 It seems obvious that the General Assembly, by this amendment, intended to take away the right which a voter previously had to write in the name of a candidate on the party-column ballot. This intention is made even clearer by the amendment of Section 4785-144, General Code, effective the same day, reading:
 

 “No ballot shall be counted which bears any* marks -other than ‘X’ marks placed thereon or a name writ-ken therein by the voter, in a blank space provided kherefor * *
 

 The amendment of this section eliminated the provision which formerly appeared therein, “that no bal
 
 *495
 
 lot shall be rejected for any technical error unless it is impossible to determine the voter’s choice.”
 

 The view of the majority seems to be that, because a blank did appear in each of the party columns under the heading of “Prosecuting Attorney,” the writing of a candidate’s name therein was writing it “in a blank space provided therefor,” within the meaning of Section 4785-144, General Code. Nowhere in the General Code do the statutes provide for any- blank space of this kind on the party-column ballot. As hereinbefore pointed out, such “a blank space” is mentioned as “provided therefor” on the nonpartisan or primary-election ballots by Section 4785-131. Similar provision is made for such a blank space on the primary ballot by Section 4785-80, General Code, and the manner of writing in names at a primary election-is specifically covered by Section 4785-87, General Code.
 

 The rules for marking the party column ballot, set forth in Section 4785-131, are very specific. In our opinion, the omission from these specific rules of any provision for a write-in, especially when taken in connection with the specific provision for a write-in in the marking of a nonpartisan or primary election ballot, clearly shows an intention of the General Assembly to provide against write-ins on the party column ballot.
 

 Keliance is placed upon Section 4785-161c, General Code. This section merely prescribes the type of voting machines to be secured. While it might not be a reasonable provision to require a machine which would permit the voter to write in the names of candidates if write-ins were not permitted, it does not follow that the failure to amend this statute, so as to eliminate that requirement, indicates any intention
 
 *496
 
 of the General Assembly to avoid the clear import of the language used by it in adopting amended Sections 4785-131 and 4785-144.
 

 We agree that a statute should if possible be so construed as to save it from constitutional infirmities. However, the judgment of the lower court deprived no one of his right to vote. It deprived no one of his right to seek, in a proper manner, the nomination of a candidate. Those who tried to vote for the contestee simply neglected to get her name printed on the ballot. They could have done that by following the method prescribed by the General Assembly. There is no constitutional inhibition against reasonable regulations of elections by the General Assembly. See
 
 State, ex rel. Weinberger, a Taxpayer,
 
 v.
 
 Miller,
 
 87 Ohio St., 12, 99 N. E., 1078, 44 L. R. A. (N. S.), 712, Ann. Cas. 1913E, 761;
 
 State, ex rel. Bateman,
 
 v.
 
 Bode,
 
 55 Ohio St., 224, 45 N. E., 195, 60 Am. St. Rep., 696, 34 L. R. A., 498;
 
 Daggett v. Hudson,
 
 43 Ohio St., 548, 3 N. E., 538. 54 Am. Rep., 832.
 

 If existing laws are to be amended that should be accomplished by legislative enactment and not by judicial construction.